418 F.2d 1328
 The UNITED STATES of America, FOR the USE AND BENEFIT OF C.
H. BENTON, INC., a California corporation,
Plaintiff-Appellant,
v.
ROELOF CONSTRUCTION COMPANY, doing business as Truett
Painting Company; and Fidelity and Casualty
Company of New York, Defendants-Appellees.
 No. 22639.
 United States Court of Appeals Ninth Circuit.
 Dec. 1, 1969.
 
 1
 David S. Folsom (argued), San Diego, Cal., for appellant.
 
 
 2
 Harold F. Tebbetts (argued), San Diego, Cal., for appellee.
 
 
 3
 Before ELY and HUFSTEDLER, Circuit Judges, and WHELAN,* District judge.
 
 WHELAN, District Judge:
 
 4
 This is an appeal by a Miller Act use plaintiff from a judgment of the U.S. District Court in favor of defendants. The defendants and appellees are Roelof Construction Company, which purchased painting materials from the use plaintiff for use on the government contract covered by the Miller Act bond, and Fidelity and Casualty Company of New York.
 
 
 5
 The use plaintiff had supplied defendant Roelof Construction Company, hereinafter Roelof, with painting materials for a period of about one and one-half years to two years prior to June of 1966 and up to at least June 20, 1966. The paint was supplied on various jobs, some of which were not government bonded jobs. Two of the government bonded jobs were the Bayview housing job and the Cabrillo housing job. Paint on these latter two jobs, hereinafter the bonded jobs, was furnished from some time in April of 1965 until April 5, 1966. The total cost of painting materials furnished on such two jobs was $31,441.72. Defendant Fidelity and Casualty Company of New York is the surety on the bond covering the two jobs last mentioned.
 
 
 6
 Use plaintiff contends that defendant Roelof still owes the sum of $4,983.09 for materials supplied by use plaintiff for the bonded jobs. While defendants admit that Roelof owes use plaintiff more than the amount of $4,983.09, defendants contend that the amount owing by Roelof to use plaintiff is for paints and materials supplied by use plaintiff to defendant Roelof for jobs other than the bonded jobs. Defendants claim that certain payments made by Roelof to use plaintiff over and above the amount of payments acknowledged by use plaintiff to have been paid on account of the bonded jobs were in fact payments that should have been credited to the bonded jobs.
 
 
 7
 The trial court rendered its decision in a memorandum stating that the memorandum constituted the court's findings of fact and conclusions of law. The court found that use plaintiff was aware of the source of the disputed funds which were paid to use plaintiff by Roelof and that the use plaintiff should have applied such funds to the bonded jobs and not to other due accounts. The law is well settled that if a creditor knows or has reason to believe that money paid him is received from a particular bonded job, he has the duty to apply the funds so received from the debtor upon that account. United States for use of Briggs v. Grubb, 358 F.2d 508, 513 (9th Cir. 1966); see Consolidated Electric Company v. United States for use and benefit of Gough Industries, 355 F.2d 437, 440 (9th Cir. 1966). Too, it seems established that where money received by a contractor on a bonded job is deposited in an account in an amount in excess of the charge by a supplier for material furnished for and used on the bonded job, and thereafter payments are made from such account by the contractor to such supplier, such payment to the extent of the cost of the materials furnished by such supplier for and used on the bonded job must be credited on that job even in absence of proof that the supplier, who had also furnished the contractor with materials for other but non-bonded jobs, knew the source of such funds received by him. Columbia Digger Co. v. Sparks, 227 Fed. 780 (9th Cir.1915) (cited with approval in United States for use of Briggs v. Grubb, supra, and Consolidated Electric Company v. United States for use of Gough Industries, supra).
 
 
 8
 However, we are satisfied that here there is substantial evidence to support the trial court's finding that use plaintiff knew that the bonded jobs in question produced funds paid by Roelof to use plaintiff to the amount of the entire cost of such materials furnished by use plaintiff for such bonded jobs; and that the finding of the trial court is not clearly erroneous. Firstly, while the trial court stated that it was not necessary to decide the conflict as to how the promissory note given by Roelof on June 22, 1966, was to be applied, the court's expressed finding before mentioned has within it an implied finding that the note was not given for amounts due on the bonded jobs. Such implied finding is further demonstrated by the fact that the trial court found that it would be more logical that the promissory note was taken as security for the Hanalei job. Such implied finding is supported by the evidence.
 
 
 9
 Also, other evidence supports the trial court's finding that Roelof had completely paid for the supplies furnished by use plaintiff for the bonded jobs.
 
 
 10
 The trial court was justified in rejecting documentary evidence of use plaintiff purporting to establish that two certain payments made by Roelof to use plaintiff were credited to two non-bonded jobs respectively, to wit, the Vacation Village job and the Hanalei job, and to infer that the two payments should have been credited to the bonded jobs to the extent necessary to completely satisfy Roelof's obligation thereunder to the use plaintiff because of the fact that such documentary evidence in such regard is shown to be completely unworthy of belief because it is not consistent with the ledger of use plaintiff respecting its charges against Roelof. This material inconsistency is hereafter pointed out. In such circumstances, where original records are altered, it can be inferred that the facts are as contended by Roelof that the payments were credited to the bonded jobs.
 
 
 11
 Where there is tempering with evidence a presumption arises against the party who is responsible. See Wong v. Swier, 267 F.2d 749, 759 (9th Cir. 1959), citing Wigmore on Evidence, 1940, 3rd Ed., Vol. 2, Sec. 278; 31A C.J.S. Evidence, 152, 153, 155.
 
 
 12
 With respect to one of such payments, the payment of $3,166.00 paid by Roelof to use plaintiff on May 20, 1966, use plaintiff's ledger makes clear that such payment should not have been credited to the Vacation Village job and that it should have been credited to the bonded jobs. The only charges billed to Roelof for the Vacation Village job at the time of such payment totaled $1,865.74. It would seem the record that the payment was credited to the Vacation Village job was a penciled afterthought and not made in the regular course of business; and it does not properly reflect the job to which such payment should have been credited. It can be inferred that the testimony of the president of Roelof that such payment should be credited to the bonded jobs reflects the true fact.
 
 
 13
 Another example of error in the same documents produced by use plaintiff at the trial is found in the fact that in addition to the alleged crediting to the Vacation Village job of the aforesaid sum of $3,166.00, such evidence shows that in July of 1966, when a check was in fact received from Vacation Village, from which check use plaintiff received the sum of $3,300.00, the penciled notes on such documentary evidence state that of that sum $429.44 was applied to the Vacation Village account. This entry then means that use plaintiff credited for materials furnished for the Vacation Village job a total of $3,595.44; yet the original record, i.e., the ledger of use plaintiff, discloses that the total charge for materials on the Vacation Village job was in the sum of $2,830.56. The trial court could infer from these inconsistent records of use plaintiff that entries were made for purposes of the trial only and were fabricated to show that certain payments were received from jobs other than the bonded jobs.
 
 
 14
 Also, use plaintiff introduced testimony that when Roelof began to fall behind use plaintiff becamed concerned. Yet the fact is that while use plaintiff sought assignments from Roelof or joint control with Roelof as to proceeds of some jobs, use plaintiff did not seek to have joint control over the money received by Roelof from the bonded jobs either through itself acting with Roelof or through the surety of Roelof acting with Roelof, despite the fact that before Roelof received its last payment from the government on the bonded jobs Roelof was not current in its payments to use plaintiff. It is reasonable to assume, as the trial court did, that use plaintiff knew it was getting money enough from the funds received from the bonded jobs to pay for its materials furnished on such jobs. The testimony of the vice president of Roelof further supports such inference. He testified that he and the officers of use plaintiff from time to time discussed the fact that money was owing to use plaintiff on the Hanalei job.[1]
 
 
 15
 Also the inconsistency between the testimony of the president of the use plaintiff concerning payments to be made to use plaintiff after June 22, 1966, for materials furnished on the Hanalei job, and what actually occurred weighs against use plaintiff's contention that it is for materials furnished upon the bonded jobs that most of the liability of Roelof to use plaintiff rests. The trial court impliedly found that the liability of Roelof to use plaintiff is principally for materials for the Hanalei job and entirely for materials for non-bonded jobs inluding Hanalei. The summary style document, Exhibit 4, introduced in evidence by use plaintiff, makes it appear that on June 22, 1966, charges for the Hanalei job remained unpaid from Roelof in the sum of $4,675.46; the president of use plaintiff testified that the general contractor on the Hanalei job had promised that he would assist use plaintiff in seeing that monies received by Roelof from such contractor would be paid to use plaintiff to the extent of the latter's bill. The fact is that thereafter no monies were paid by Roelof to use plaintiff except for monies thereafter paid to Roelof from the Charlie Brown job and from the Vacation Village job pursuant to assignments theretofore made by Roelof to use plaintiff.
 
 
 16
 Use plaintiff attempted to establish that the payment of May 20, 1966, in the sum of $3,166.00 came from a joint check drawn by Vacation Village and made payable to use plaintiff and Roelof. However, there was no evidence to establish such fact and use plaintiff did not produce any evidence to show that it was impossible to produce at the trial of the case the records of the Vacation Village owner to show whether in fact such a joint check had been issued by said owner to Roelof and use plaintiff. It has already been shown that the crediting of such payment to the Vacation Village job by use plaintiff was not warranted and it may be presumed that if the records of the owner of Vacation Village had been produced such records would have been detrimental to the contention of use plaintiff that there was a joint check on that occasion. 31A C.J.S. Evidence 156(1) at p. 397. This presumption is even more to be honored when it is realized that use plaintiff did in fact introduce a check drawn by Vacation Village and made payable both to Roelof and use plaintiff dated July 25, 1966, in the sum of $3,469.93. Of this check $3,300.00 was paid to use plaintiff by Roelof after use plaintiff had endorsed the joint check; practically all of this payment, of course, should have been credited to the Vacation Village account owed by Roelof to use plaintiff; the documentary evidence showing a credit to the Hanalei job of more than 80% Of such payment introduced by use plaintiff in evidence clearly could have been determined, as the trial court did impliedly determine, not to be a record kept in the usual course of business. Similarly it appears that use plaintiff did not produce any credible evidence that the payment of $3,100.00 of June 15, 1966, which the vice president of Roelof testified should be credited to the bonded jobs, was in fact money attributable to the Hanalei job. It could be inferred that it in fact came from the bonded jobs and that use plaintiff knew that.
 
 
 17
 It would appear that certainly use plaintiff had reason to believe, taking the realities of the situation seriously into consideration, that the disputed payments had their source in funds from the bonded jobs. The judgment of the trial court should be affirmed upon a showing that the use plaintiff had reason to believe that the disputed payments were received from the bonded jobs. See United States for use of Briggs v. Grubb, supra; Consolidated Electric Company v. United States for use of Gough Industries, supra; St. Paul Fire and Marine Insurance Company v. United States for use of Dakota etc. Co., 309 F.2d 22, 30 (8th Cir.1962).
 
 
 18
 We are unable to conclude after consideration of all the evidence that the findings of the trial court are clearly erroneous. For the reasons stated, the judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Francis C. Whelan, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Use plaintiff contends that certain payments should be credited to the Hanalei job, a non-bonded job, rather than to the bonded jobs as contended by Roelof