The UNITED STATES of America for the Use of OWENS–CORNING FIBER-GLAS CORPORATION, a corporation, Plaintiff,

v.

BRANDT CONSTRUCTION COMPANY, a partnership, et al., Defendants.

Charles BRANDT, et al., Plaintiffs,

v.

UPTOWN NATIONAL BANK OF MOLINE, a national banking corporation, Defendant.

Nos. 83–4066, 84–4073.

United States District Court, C.D. Illinois, Peoria Division.

Oct. 23, 1984.

Robert J. Noe, Bozeman, Neighbour, Patton & Noe, Moline, Ill., for plaintiff.

Thomas A. Skorepa, Marquis, Bonnett & Skorepa, Rock Island, Ill., for defendants.

## ORDER

MIHM, District Judge.

This case was previously consolidated with an action brought by the United States for the use of Owens-Corning Fiberglas Corp. against Brandt Construction Company ("Brandt"). In that consolidated action, the Court granted Plaintiff's motion for summary judgment and entered judgment in favor of Owens-Corning. Plaintiff Brandt Construction Company now seeks to obtain from Defendant Uptown National Bank ("Uptown" or "the Bank") the amount it paid Owens-Corning in satisfaction of the prior judgment.

In Count I of the complaint, brought pursuant to the Miller Act, 40 U.S.C. § 270a et seq., Brandt alleges that the Defendant has violated the duty of a creditor to apply funds from a government bonded job to obligations incurred in generating those funds. Count II alleges misrepresentation and breach of fiduciary relationship. After oral argument, Defendant's motion for summary judgment as to Count II was denied based on the Court's finding that genuine issues of material fact exist. Both parties seek summary judgment with respect to Count I.

FACTUAL BACKGROUND

In October of 1981, Brandt, as general contractor, entered into two subcontracts with DeVolder Brothers Roofing Contractors, Inc. ("DeVolder") pertaining to the repair of two buildings at the Rock Island Arsenal. Pursuant to these contracts and in compliance with the Miller Act, Brandt executed payment and performance bonds on which it was the principal. DeVolder did not have sufficient funds to pay its suppliers and others and needed to obtain capital from a third party. DeVolder went to Uptown National Bank, to which it was already indebted on other obligations. The Bank and DeVolder worked out an agreement whereby the Bank would finance DeVolder on the Arsenal project and DeVolder would thereafter apply the profit from that job on its previously existing indebtedness to the Bank. DeVolder represented to the Bank that the profit would be approximately $60,000 and that it would come in the form of a retainage fee paid at the time the job was finished.

In April of 1982, representatives of the Bank, Brandt and DeVolder met. Brandt at that time was made aware of the Uptown-DeVolder agreement. The parties discussed how Uptown was to be repaid its monthly advances to DeVolder and worked out an agreement whereby Brandt made checks payable jointly to DeVolder and Uptown.

On October 28, 1982 Brandt made its final payment to DeVolder by a check in the amount of $64,734.56, payable jointly to DeVolder and Uptown. At the time that payment was made, Brandt was unaware that certain firms which had supplied material for the Arsenal project had not been paid, including Owens-Corning. The final payment was in an amount sufficient to pay the balance due all firms supplying material. DeVolder advised Uptown that it was necessary to use the final payment from Brandt to satisfy its obligation to the suppliers and requested that the Bank not take the check as previously agreed. Uptown refused to comply with DeVolder's request and applied the sums to DeVolder's pre-existing indebtedness. DeVolder was thus unable to pay Owens-Corning. DeVolder subsequently filed bankruptcy. Owens-Corning filed a claim against Brandt and the surety on its bond, pursuant to the terms of the Miller Act, and this Court subsequently entered judgment against Brandt. Brandt paid Owens-Corning $59,853.62 in satisfaction of the judgment.

CROSS–MOTIONS FOR SUMMARY JUDGMENT

Although this is not a Miller Act proceeding, Brandt suggests it is a case seeking recovery of the amount paid to a successful Miller Act claimant and it arises because of Uptown's deliberate misappropriation of funds. Brandt argues that despite the Bank's knowledge that the funds in question were derived from a bonded government project and that certain suppliers were unpaid, Uptown appropriated the funds and applied the payment on the note of DeVolder, an indebtedness totally unrelated to the government project. Brandt contends that the Bank thus violated the rule that a creditor who knows that funds are derived from a government bonded job is obligated to apply the funds to obligations incurred in generating those funds as opposed to an unrelated transaction. See *United States for the Use of C.H. Benton, Inc. v. Roelof Construction Co.*, 418 F.2d 1328 (9th Cir.1969); *United States for the Use of Hyland Electrical Supply Co. v. Franchi Brothers Construction Corp.*, 378 F.2d 134 (2nd Cir.1967).

Uptown argues that the traditional remedies available to a surety or general contractor who has been exposed to liability under its payment bond are subrogation and indemnification. Under either of these theories of recovery, Defendant contends that Brandt has a cause of action against the subcontractor DeVolder but that there is no basis in law for Brandt to in effect waive any rights it has against DeVolder and instead plead a cause of action against the Defendant.

The rule has been established that "once it has been determined that a supplier has knowingly misapplied funds, the misapplied funds must be reallocated to the proper accounts (citations omitted)." *United States for the Use of General Electric Supply Co. v. Wiring, Inc.,* 646 F.2d 1037, 1040 (5th Cir.1981).

> "The rationale for this rule is that it would be unfair to the principal and surety on the Miller Act bond to permit a supplier to collect old debts out of monies paid on a current government project, secure in the knowledge that he will be able to collect for the material furnished on the government project by filing a claim against the bond." 646 F.2d at 1040.

This rule and the rationale behind it do not provide support for the argument advanced by Brandt in this case.

■ A bank or financial institution which advances money for a government project has no Miller Act protection. The injection of capital into a government project does not constitute the furnishing of labor or materials, and therefore such a creditor has no cause of action against the general contractor's bond. See *First National of Dothan v. American Surety Co. of New York,* 53 F.2d 746 (5th Cir.1931); *U.S. for the Use of First Continental National Bank & Trust Co. v. Western Contracting Corp.,* 341 F.2d 383 (8th Cir.1965).

*Roelof,* supra, and *Franchi Brothers,* supra, involve factual situations in which a materialman or supplier applied money from a government job to a prior delinquent account and then attempted to assert a Miller Act proceeding on the general contractor's bond. These cases do not establish that any *creditor* who knows that funds are derived from a bonded job is obligated to apply the amount to that account as opposed to an unrelated obligation. See *American Fidelity Co. v. National City Bank of Evansville,* 266 F.2d 910 (D.C.Cir.1959) (where contractor borrowed money from bank and as security therefor legally assigned proceeds of government construction to the bank, in the absence of fraud, sureties on the contractor's performance and payment bonds could not recover progress payments from bank to reimburse them for sums paid by them because of contractor's default after bank had collected progress payments), *Coconut Grove Exchange Bank v. New Amsterdam Casualty Co.,* 149 F.2d 73 (5th Cir.1945).

■ Contrary to Brandt's suggestion, the status of the recipient of the funds is an important consideration. The restrictions in the Miller Act exist not only to protect a general contractor from making double payments, but also to ensure that obligations owing to suppliers and materialmen arising from government projects are satisfied. Further, policy considerations militate against acceptance of Brandt's position. Uptown entered into a contract with the subcontractor DeVolder and obtained assignment of the monies due to DeVolder from Brandt. Under Brandt's logic, once Brandt found out about the diversion of funds by its subcontractor, it could recoup these funds from Uptown and use the money to pay suppliers. If financial institutions do not receive the benefit of their contractual agreements when financing public works, however, they may be dissuaded from becoming involved in public works projects.

■ Brandt is not entitled to recover against Uptown under the remedies of subrogation or indemnification. Under the principles of subrogation, once Brandt pays the claim of the supplier, Brandt stands in the shoes of that supplier and can gain no better position than the supplier had.

There is no allegation that any material-man had an action against Uptown as well as against DeVolder. If it is assumed that Uptown breached some portion of its contract with DeVolder concerning the application of the retainage, Brandt has no right to assert a breach on behalf of DeVolder. There is neither privity of contract nor is there any specific subrogation right contained in the Brandt-DeVolder subcontract which would allow Brandt to assert against Uptown any defenses which DeVolder may have against the Bank. Additionally, there exists in section 8 of the Brandt-DeVolder subcontracts an indemnity agreement by which DeVolder promises to pay for all material furnished under the subcontract and to indemnify Brandt and hold him harmless from any and all claims by those other than the subcontractor. There is no such indemnity agreement between Brandt and Uptown.

Accordingly, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED as to Count I.